# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

RODERICK V. THOMAS,

    Plaintiff,

    v.

ELIXIR EXTRUSIONS, LLC, MIKE
MOORE, RHONDA DOUGLAS, STEVEN
JONES, and DAVID WILKERSON,

    Defendants.

No. 5:18-CV-00011

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants Elixir Extrusions, LLC, Mike Moore, Rhonda Douglas, Steven Jones, and David Wilkerson. Dkt. No. 48. The Motion has been fully briefed and is ripe for review. For the reasons that follow, Defendants' Motion is **GRANTED**.

## BACKGROUND

### I. Plaintiff Has Not Responded to Defendants' Motion for Summary Judgment or Defendants' Statement of Undisputed Material Facts

Plaintiff Roderick Thomas has not responded to Defendants' Motion for Summary Judgment or Defendants' Statement of Undisputed Material Facts. Southern District of Georgia Local Rule 56.1 provides that "[a]ll material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party." Moreover, Local Rule 7.5 provides that "failure to respond" to a motion "within the applicable time period shall indicate that there is no opposition to a motion." Because Plaintiff has not responded, pursuant to Local Rule 56.1, the facts as stated in Defendants' Statement of Undisputed Material Fact are deemed admitted for the purpose of considering Defendants' Motion. This is so, even though Plaintiff is *pro se*.[1] See <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a pro se [in forma pauperis] litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); <u>see also</u> <u>Smith v. Mercer</u>, 572 F. App'x 676, 678 (11th Cir. 2014) ("The Federal Rules of Civil Procedure state that a party asserting that a fact is genuinely disputed must cite to specific materials in the record and a failure to do so allows the district court to consider the fact as undisputed for purposes of the motion for summary judgment." (citing Fed. R. Civ. P. 56(c)(1)(A), (e)(2))); <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268 (11th Cir. 2008) (stating in relation to a functionally identical local

---

[1] The Court is satisfied that Plaintiff was provided record notice of Defendants' Motion for Summary Judgment and mailed copies of that Motion as indicated by the docket. <u>See</u> Dkt. No. 49. The Motion was mailed to the same address—308 Live Oak Circle, Broxton, GA 31519—to which every other notice in this case was sent. <u>See, e.g.</u>, Dkt. Nos. 3, 6, 19, 21, 30, 34, 40, 42, 43, 44. Moreover, that same address is listed on Plaintiff's pro se Complaint, dkt. no. 1, and on his Status Report, dkt. no. 46.

AO 72A
(Rev. 8/82)

rule: "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."). The Court has reviewed the entire record to ensure that summary judgment is appropriate. As explained below, it is.

## II. Plaintiff's Employment with Elixir

This case involves Plaintiff's employment with, termination by, and subsequent discrimination and defamation suit against his former employer, Defendant Elixir Extrusions, LLC ("Elixir"). Elixir is a limited liability corporation that provides full-service, custom aluminum extrusions and fabricated parts for a variety of applications, including structural components, lighting fixture components, and door frames. Dkt. No. 48-1 ¶ 1.[2] Elixir operated a large facility located in Douglas, Georgia ("the Facility"), and it employed 222 individuals in 2017. Id. ¶¶ 2-3. Of those 222 employees, 74 were African Americans, 108 were Caucasian, and 40 were of other races. Id. ¶ 4.

Plaintiff, who is African American, worked as a Fab Machine Operator in the Fabrication Department at the Facility at all times

---

[2] The Court will cite facts as written in Defendants' Statement of Undisputed Material Fact since Plaintiff did not respond to Defendant's Statement thus making the facts written therein uncontroverted. See L.R. 56.1. The Court also notes that Defendant's Statement of Undisputed Material facts is supported by the record. See 48-1.

relevant to this suit. Id. ¶¶ 2, 6, 9. In this position, Plaintiff was responsible for ensuring that when parts were sawed off, the rough edges were smoothed before a product was packaged for the customer. Id. ¶ 10. While working for Elixir, Plaintiff reported to Defendants David Wilkerson, his supervisor, and Michael Moore, his manager. Id. ¶¶ 8, 11. Defendant Rhonda Douglas, Elixir's HR Manager, was involved in initially hiring Plaintiff (along with Michael Moore). Id. ¶ 8. Lastly, Defendant Stephen Jones is the Vice President of Elixir. Id. ¶ 14.[3]

### III. The April 26, 2017 Incident

On April 26, 2017, employee Carroll Dale emailed Jones and Douglas to inform them that a truck driver reported a small bag of marijuana in the main aisle of the Facility. Id. ¶ 14. Dale indicated in his email that he was alerted to what looked like a bag of marijuana that someone dropped on the floor and that he had placed the bag in his desk drawer. Id. ¶¶ 15-16. Dale suggested that Jones and Douglas check camera footage to see who dropped it.[4] Id. ¶ 17. Jones retrieved the bag of marijuana and went to Douglas's office where they both began an investigation into the matter.[5] Id. ¶¶ 18-19. Douglas and Jones obtained the footage

---

[3] The Court will refer to Moore, Douglas, Jones, and Wilkerson collectively as the Individual Defendants. All of the Individual Defendants are Caucasian. Dkt. No. 48-1 ¶¶ 12, 14.
[4] Elixir has surveillance cameras placed throughout the Facility. Id. ¶ 19.
[5] Elixir's Employee Handbook contains a Drug and Alcohol Policy, which provides:

from the surveillance cameras and reviewed that footage to determine from where the marijuana came. Id. ¶¶ 20-21.

In the video footage, Plaintiff is seen entering the vending machine area from the Packing Department and begins speaking to co-worker Orlando Spellman. Id. ¶¶ 22-23.[6] Another co-worker, Robert Keith Adams, can be seen standing toward the back of the video frame.[7] Id. ¶ 25. At 7:20:38, the video shows Plaintiff extending his right hand toward Spellman and the two appear to exchange an item that is clear or white. Id. ¶ 26. After this exchange, Spellman immediately puts both hands into his pockets

---

The Company is concerned about the use of alcohol, illegal drugs or controlled substances as it affects the workplace. Use of these substances whether on or off the job can adversely affect an employee's work performance, efficiency, safety and health and therefore seriously impair the employee's value to the Company. In addition, the use or possession of these substances on the job constitutes a potential danger to the welfare and safety of other employees and exposes the Company to the risk of property loss or damage, as well as injury to other persons. For these reasons, it is our policy to maintain a drug-free workplace in compliance with the Georgia Drug-Free Workplace Acts, O.C.G.A. 50-2-1 et seq. and O.C.G.A. 34-9- 410 et seq.

. . .

The unlawful possession, sale manufacture, distribution and dispensation, or use of drugs (including a controlled substance and marijuana as referenced in O.C.G.A 50-24-2) is prohibited on Company premises or while conducting Company business or operating a Company owned or leased vehicle.

. . .

The Company may take disciplinary action, up to and including immediate discharge, against an employee for violation of this policy.

Id. ¶¶ 92-93. Plaintiff admits that he received Elixir's employee handbook and that he was governed by the contents. Id. ¶ 94.

[6] The Court cites to Defendants' Statement of Undisputed Material Facts for clarity and efficiency, but the Court notes that it reviewed the video evidence in its entirety.

[7] Plaintiff often provided Adams a ride to work, and he did so on the morning of April 26, 2017. Id. ¶ 13.

and turns away from the camera as Plaintiff moves toward the vending machine. Id. ¶ 27. Then, Plaintiff, Adams, and Spellman are seen talking near the vending machine when Adams hurries into the men's restroom near the vending machines. Id. ¶ 28. About seven seconds after Adams enters the men's restroom, Spellman also enters that same restroom. Id. ¶ 29.

At 7:22:50, Plaintiff leaves the vending area after getting a drink from the vending machine. Id. ¶ 30. About a minute later, Adams emerges from the restroom while drying his hands, then abruptly turns around and walks back into the restroom. Id. ¶ 31. A few seconds later, Spellman leaves the restroom and walks toward the vending machine areas, and then, he exits the frame and returns back to the Packing Department. Id. ¶ 32. Next, Adams emerges from the men's restroom a second time and is seen walking down the main aisle of the facility. Id. ¶¶ 35-37. While walking down the main aisle, a small package falls out of Adams's pocket at approximately 7:24:28. Id. ¶ 38. After the package drops, a small dark spot can be seen on the floor as Adams exits the video frame. Id. ¶ 39. This package was dropped in the same spot where the marijuana was found by Dale. Id. ¶ 40.

Moore identified the individuals in the video for Douglas and Jones,[8] and based off of their review of the video and the bag of

---

[8] Spellman and Adams are both African American. Dkt. No. 48-6 at 156-57.

AO 72A
(Rev. 8/82)

marijuana found on the floor, Douglas, Jones, and Moore believed that Plaintiff, Adams, and Spellman were involved in bringing drugs to work and distributing those drugs in violation of Elixir's Drug and Alcohol policy. Id. ¶¶ 42-44. In response, Douglas called the Coffee County Sheriff's Department to tell them that a bag of marijuana was found on the premises. Id. ¶ 45.

### IV. Sheriff's Office and Elixir Investigations

Upon arrival, Detectives from the Coffee County Sheriff's Department reviewed the video footage and agreed with Douglas and Jones that, based on their experience, this behavior was consistent with drug activity. Id. ¶ 47-49. The Detectives also agreed with Defendants that the package that Plaintiff handed to Spellman looked like it could be drugs. Id. ¶ 48. The Detectives conducted a walk-through in the parking lot around employee vehicles with their K-9 unit. Id. ¶¶ 51-52. After conducting the walk-through, Adams was called to Douglas' office. Id. ¶ 54. One of the Detectives then quested Adams in the presence of Elixir's management employees. Id. ¶ 55. When asked about the incident, Adams initially denied any involvement with the package of marijuana but later admitted that the package was his. Id. ¶¶ 56-57. Adams was then transported to the Coffee County Jail for the charge of possession of marijuana. Id. ¶ 58. As for Spellman, he was terminated for his involvement in the alleged distribution of

AO 72A
(Rev. 8/82)

drugs at work and was transferred back to the Valdosta Transitional Center where he was residing at the time. Id. ¶¶ 60-61.

That afternoon, Plaintiff and other Elixir employees were asked to take drug tests. Id. ¶ 62. All employees drug tested that day, including Plaintiff, passed. Id. ¶ 63. After the drug test, Plaintiff returned to work. Id. ¶ 64.

## V.    Plaintiff's Meeting with Management and Subsequent Termination

Later that afternoon, Wilkerson asked Plaintiff to come to Douglas's office to meet with him, Douglas, Jones, and Moore. Id. ¶¶ 65-66. Douglas showed Plaintiff the video footage and asked him to explain what was occurring in the video. Id. ¶¶ 67-68. Plaintiff responded that he did not know and asked Jones and Douglas what they thought was in his hand. Id. ¶ 70. Defendants continued to ask Plaintiff what it was that he gave to Spellman to which he continued to respond that he did not know. Id. at ¶¶ 71-72. Plaintiff then told Defendants that he did not have drugs in his hand.[9] Id. ¶ 74. Defendants responded that they had not mentioned anything about drugs. Id. ¶ 76. Defendants asked Plaintiff what was in his hand and explained that if he could not tell them, they would have to walk him out to his car and terminate his employment. Id. ¶ 89. Plaintiff provided no response so

---

[9] Defendants had not mentioned drugs to the Plaintiff prior to him making this statement. Id. at ¶ 69.

Defendants walked him to his car and shook his hand. Id. ¶¶ 90-91.

Plaintiff testified to a different account of the events in his deposition. Id. ¶ 77. Plaintiff testified that after his drug test, he was called into the office and was told "You good. You can go back to work but we need you to tell me what's on this video." Id. ¶ 78. He then testified that he told Defendants that "Tonya had told [him] to get her a monster drink . . . and she gave [him] change." Id. ¶ 79. Plaintiff testified that on the way to get the drink, he saw "Mr. Keith and Mr. Spellman, and [he] bumped hands with Mr. Spellman." Id. ¶ 80. Plaintiff later clarified that he bumped fists with Spellman to greet him and then went to get the drink requested by Tonya. Id. ¶ 81. During his deposition, Plaintiff testified that when Moore asked him what was in his hand, he told Moore that he had change in his hand for the monster drink. Id. ¶ 82. According to Plaintiff's testimony, Moore responded by saying "[w]ell that don't look like change. But if you can't tell me what's in your hand, we're going to have to walk you to the door." Id. ¶ 83. Plaintiff also testified that Moore said at one point "there's clearly something in your hand." Id. ¶ 102. During his deposition, Plaintiff testified that he did not have drugs and when asked what was in his hand, he stated "that's change in my hand. That's—it's nothing else in my hand" and said "there's no drug or nothing." Id. ¶¶ 84-85.

AO 72A
(Rev. 8/82)

## VI. Procedural History

After his termination, Plaintiff filed a charge of discrimination with the EEOC, and on November 2, 2017, he received a right to sue letter. Dkt. No. 1-1. Plaintiff filed his pro se Complaint on February 15, 2018, alleging claims against Elixir as well as the four Individual Defendants for disparate treatment and retaliation under Title VII, 42 U.S.C. § 2000e, et. seq., and defamation under Georgia law. Dkt. No. 1. On December 13, 2018, the Court granted the Individual Defendants' Partial Motion to Dismiss and dismissed Plaintiff's Title VII claims against the Individual Defendants. Dkt. No. 34. On April 25, 2019, Defendants filed the Motion for Summary Judgment currently at issue before the Court arguing for summary judgment on the remaining Title VII claims against Elixir and the defamation claim. Dkt. No. 48. Plaintiff has not responded to Defendants' Motion.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

However, as in the instant case, where the nonmovant fails to respond to the movant's motion for summary judgment and the movant's Statement of Undisputed Material Facts is deemed admitted, the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009); see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004) ("The district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). "Even in

11

an unopposed motion, the moving party still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Mann, 588 F.3d at 1303 (citation omitted). Thus, while "the district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted," it still "must ensure that the motion itself is supported by evidentiary materials." One Piece of Real Prop., 363 F.3d at 1101. As such, the Court "must review all of the evidentiary materials submitted in support of the motion for summary judgment." Id. at 1101-02.

## DISCUSSION

In this case, Plaintiff asserted claims against Defendants for disparate treatment and retaliation under Title VII, 42 U.S.C. § 2000e, et. seq. In addition, Plaintiff also asserted a state law claim of defamation. Upon reviewing the evidence submitted by Defendants in their unopposed Motion for Summary Judgment, the Court finds that no genuine dispute of material fact exists as to any of Plaintiff's claims because the evidence in the record clearly demonstrates that Plaintiff cannot meet the required elements of his claims. Therefore, for reasons explained below, Defendants' Motion is **GRANTED**.

AO 72A
(Rev. 8/82)

## I. Title VII Disparate Treatment Claim

Plaintiff claims that Defendants discriminated against him by terminating his employment based on his race. "Title VII prohibits an employer from discharging, or otherwise discriminating against, an individual with respect to his compensation, terms, conditions, or privileges of employment because of his race." Redd v. United Parcel Serv., Inc., 615 F. App'x 598, 602-03 (11th Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)(1)). A plaintiff pursuing a claim of disparate treatment under Title VII must prove discrimination through either direct or circumstantial evidence. See E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Id. (citations omitted). "So, direct evidence of discrimination is powerful evidence capable of making out a prima facie case essentially by itself." Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 (11th Cir. 1998). "Remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

"Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas paradigm for circumstantial evidence claims." E.E.O.C., 220 F.3d at

13

1286. Under the <u>McDonnell Douglas</u> framework, the first step requires a plaintiff to show a prima facie case of racial discrimination. "Presenting a prima facie case is not onerous as it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Rioux v. City of Atlanta</u>, 520 F.3d 1269, 1275 (11th Cir. 2008). Under the traditional rule, "[t]o make out a prima facie case of racial discrimination a plaintiff must show (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).

If a plaintiff can establish a prima facie case, a presumption of discrimination in favor of the plaintiff is created and the burden of production then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its actions." <u>Wilson</u>, 376 F.3d at 1087. Although this is generally a light burden for an employer to meet, <u>see</u> <u>Smith v. Horner</u>, 839 F.2d 1530, 1537 (11th Cir. 1988) (describing employer's burden at this stage as "exceedingly light"), an employer still must present some neutral, non-discriminatory basis for the actions that he or she took. If the employer satisfies this burden, "then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the

14

employer is a pretext for illegal discrimination." Wilson, 376 F.3d at 1087. "The inquiry into pretext requires [the Court] to determine whether, in view of all the evidence, 'the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct.'" Webb v. Int'l Bus. Machines Corp., 458 F. App'x 871, 876 (11th Cir. 2012) (quoting Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir.2001)). "To show pretext, [an employee] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010). However, an employee is "not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Rather, "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

Plaintiff has not offered any direct evidence of disparate treatment in this case, and, therefore, he must establish his claim through circumstantial evidence under the McDonnel Douglas

15

framework. However, within this framework, Plaintiff's disparate treatment claim fails for two reasons. First, Plaintiff fails to establish a prima facie case of disparate treatment because he has failed to show that other similarly situated employees were treated more favorably. Second, Plaintiff fails to rebut Defendant's proffered nondiscriminatory reason by showing that it is pretext for illegal discrimination.

## A. Prima Facie Case of Racial Discrimination

Plaintiff cannot establish a prima facie case of racial discrimination because he cannot prove that similarly situated employees outside of his class were treated differently. Recently, the Eleventh Circuit changed its rule regarding the definition of a comparator in the prima facie analysis for employment discrimination claims. See Lewis v. City of Union City, 918 F.3d 1213 (11th Cir. 2019). In Lewis, the Eleventh Circuit held that "a plaintiff asserting an intentional-discrimination claim under McDonnell Douglas must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" Id. at 1226. There, the Court also provided similarities that would lead to a valid comparison. A similarly situated comparator:

> will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor

AO 72A
(Rev. 8/82)

as the plaintiff; will have shared the plaintiff's employment or disciplinary history.

Id. at 1227-28. Plaintiff has not presented any evidence suggesting that a similarly situated employee outside of his protected class was treated differently. In fact, Plaintiff has not pointed to any other employee at Elixir to show that he was treated differently by being fired for allegedly violating Elixir's drug policy.[10] See Payne v. Goodyear Tire & Rubber Co., 760 F. App'x 803, 808 (11th Cir. 2019) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) and Lewis, 918 F.3d at 1213). Additionally, the record is devoid of any "other evidence of discrimination."[11]  Id.; cf. Rioux, 520 F.3d at 1277 (finding prima

---

[10] Rather, Defendants have actually presented evidence to the contrary, showing that at least in one instance, a similarly situated employee outside of Plaintiff's class was given the same treatment as Plaintiff. See Dkt. No. 48-1 ¶ 99 (explaining that Elixir terminated a white employee in February 2019 who violated the drug policy, was supervised by Moore, and held the same position as Plaintiff).

[11] Plaintiff testified in his deposition that he believed that he was discriminated against because of his race when he was fired for violating the drug policy because Defendants based their decision off of stereotypes, his friendship with Adams and Spellman, and the fact that he drove Adams to work. Dkt. No. 48-6 at 151-52. However, Plaintiff did not present any evidence to support these assertions. Plaintiffs subjective belief that he was stereotyped based on his race and relationship with his co-workers, without more, is insufficient to establish his prima facie case of discrimination based on an "other evidence of discrimination" standard. Cf. Rioux, 520 F.3d at 1277 (finding prima facie case met based on "other evidence" standard where plaintiff's employer kept a race-tracking spreadsheet of personnel decisions, desired to keep a racial balance of 50/50 black/white among the employees, a

facie case met where plaintiff presented no valid comparator but presented other evidence of discrimination). Thus, because Plaintiff has failed to point to any comparator and has not presented any other evidence of discrimination, he fails to establish the prima facie case for his disparate treatment claim.

## B. Pretext

Assuming *arguendo* that Plaintiff could establish a prima facie case, his disparate treatment claim fails to survive summary judgment because Defendants have pointed to a non-discriminatory reason for their actions and Plaintiff has failed to show that Defendants' asserted nondiscriminatory reason is pretext for discrimination. Defendants assert that Plaintiff was terminated for violating the company's Drug and Alcohol Policy. This justification based on company policy is a valid non-discriminatory justification.

Because Defendants provided a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts back to

---

short list of candidates to replace plaintiff contained candidates all of a different race from plaintiff, another employee was goaded into filing a grievance against plaintiff by his employer, the difference in degree of an investigation of plaintiff versus an investigation of another employee, etc.); Robinson v. City of Darien, 362 F. Supp. 3d 1345, 1365 (S.D. Ga. 2019) (finding other evidence of discrimination where, among other things, witnesses testified that after plaintiff's interracial relationship with a coworker became public, he was disciplined more often, evidence showed that plaintiff was subject to a vehicle policy that other officers were not subjected to, plaintiff's supervisors gave conflicting reasons for demoting him, plaintiff's supervisors allowed a Nazi flag to be hung in the office, and plaintiff's supervisor admitted to making discriminatory comments about interracial dating and telling a story about shooting African Americans with a BB gun when he was younger).

Plaintiff to show that this proffered reason is pretext. However, Plaintiff did not respond with any evidence that Defendants' asserted reason is actually pretext for illegal discrimination. Moreover, after reviewing the record, the Court finds no evidence that would support a finding of pretext in this case. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Holifield, 115 F.3d at 1565. Thus, the inquiry here is whether Defendants reasonably and in good faith believed that Plaintiff violated Elixir's drug policy, not whether he actually violated the policy by distributing drugs at work. See id. ("[W]here the employer produces . . . evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining in the ADEA discrimination context that "for an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory"); Feise v. N. Broward Hosp. Dist., 683 F. App'x 746, 753 (11th Cir. 2017) (explaining in the FMLA retaliation context that "an employer can hardly be said to have discriminated or retaliated against an employee if it terminated the employee

based on a good faith belief that she violated a rule, even if the purported violation never actually occurred"); Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (stating in the ADEA discrimination context that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason").

Here, the record shows that Defendants after finding marijuana in the Facility, reviewing video footage, consulting law enforcement, and interviewing Plaintiff, terminated him for believing that he was involved in distributing drugs at the Facility in violation of Elixir's drug policy. Plaintiff has presented no evidence showing that Defendants' decision was actually pretext for discriminating against him based on his race. Indeed, Defendants could have been wrong in their belief that Plaintiff violated the drug policy, but nothing in the evidence shows that their reason, mistaken or not, had anything to do with Plaintiff's race. Thus, even assuming that Plaintiff could establish his prima facie case, he still fails to meet his burden to show that Defendants' proffered non-discriminatory reason was pretext for discrimination. For these reasons, Defendants' Motion for Summary Judgment on Plaintiff's disparate treatment claim is due to be **GRANTED**.

AO 72A
(Rev. 8/82)

## II. Title VII Retaliation Claim

Plaintiff claims that Defendants terminated his employment in retaliation against him for engaging in a protected activity under Title VII. Title VII prohibits an employer from retaliating against an employee because the employee "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Accordingly, Title VII forbids retaliation against an employee who reports race discrimination in the workplace. Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 273 (2009). Absent direct evidence of discrimination, the Court employs the McDonnell Douglas framework when analyzing claims for retaliation. See Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009). Under this framework, a plaintiff establishes a prima facie case of retaliation by showing that he: (1) engaged in a statutorily protected activity; (2) suffered a materially adverse employment action; and (3) established a causal link between the protected activity and the adverse action. Holifield, 115 F.3d at 1566; Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012).

Like his disparate treatment claim, Plaintiff relies on the McDonnel Douglas framework to establish his retaliation claim through circumstantial evidence. However, Plaintiff's retaliation claim fails for three reasons. First, Plaintiff fails to show that he engaged in protected activity. Second, even if Plaintiff engaged in protected activity, he has failed to show a causal

connection between the alleged protected activity and the adverse employment action. Third, Plaintiff fails to rebut Defendants' proffered nondiscriminatory reason by showing that it is pretext for illegal discrimination.

## A. Prima Facie Case of Retaliation

First, plaintiff fails to show that he engaged in a statutorily protected activity. "Statutorily protected activity includes (1) 'oppos[ing] any practice made an unlawful employment practice by' Title VII and (2) 'mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under' Title VII. 42 U.S.C. § 2000e-3(a)." Smith v. City of Greensboro, 647 F. App'x 976, 983 (11th Cir. 2016) (citing EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174-75 (11th Cir.2000)); see also Edwards v. Ambient Healthcare of Ga., Inc., 674 F. App'x 926, 930 (11th Cir. 2017)). Plaintiff claims that Defendants retaliated against him based on his race because he bumped hands with another employee and transported a co-worker to and from work. Dkt. No. 48-1 ¶ 86. He explained that he was terminated as an example "to show the rest of the plant that [Elixir] won't tolerate this type of behavior." Id. ¶ 87. However, neither of these actions constitute protected activity under Title VII, and Plaintiff has not alleged any unlawful conduct by Defendants that he was opposing in any way.

AO 72A
(Rev. 8/82)

In order to constitute protected activity, Plaintiff's activity must fall under the opposition clause or participation clause of Title VII. See Total Sys. Servs., Inc., 221 F.3d at 1174 ("Under the opposition clause, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.' And, under the participation clause, an employer may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" (quoting 42 U.S.C. § 2000e-3(a))). In other words, protected activity occurs when an employee *opposes* employment practices made unlawful by Title VII or *participates* in a Title VII investigation.

Here, Plaintiff fails to allege any unlawful conduct by Defendants that he acted in opposition of and alternatively fails to allege that he was part of any Title VII investigation during his employment. A fist bump and transporting a co-worker do not constitute protected activity because they were not done in opposition to any alleged unlawful conduct of Defendants and were not part of a Title VII investigation. In other words, Plaintiff has failed to show that he took any action protected by Title VII for which he was retaliated against. Thus, Plaintiff cannot establish a prima facie case of retaliation because he fails to show that he engaged in protected activity.

AO 72A
(Rev. 8/82)

Second, Plaintiff fails to show a causal connection between the alleged protected activity and his termination.[12]  Because Plaintiff fails to show that he engaged in any protected activity, he also fails to show a causal connection.  Without a protected activity, he cannot show a connection between a protected activity and an adverse action.  Thus, for these two reasons, Plaintiff fails to establish a prima facie case of retaliation.

**B. Pretext**

Assuming *arguendo* that Plaintiff could establish a prima facie case, his retaliation claim would still fail under the McDonnell Douglas burden-shifting framework that also applies to Title VII retaliation claims.  See Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009).  Under McDonnel Douglas, the employee must first establish a prima facie case for retaliation.  This "create[s] a presumption that the adverse action was the product of an intent to retaliate."  Id. at 1308.  Once a prima facie case has been established, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action."  Id. If the defendant satisfies this burden, then the presumption is

---

[12] Plaintiff's termination clearly meets the second element of a materially adverse action.  See Williams v. Apalachee Ctr., Inc., 315 F. App'x 798, 799 (11th Cir. 2009) ("In order to constitute an adverse employment action for purposes of establishing a prima facie case under Title VII's anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge.").

24

rebutted and the burden shifts back to the plaintiff to demonstrate "that the defendant's proffered reason was merely a pretext to mask discriminatory actions." Id.

Assuming that Plaintiff was able to establish a prima facie case of retaliation, the burden shifts to Defendants to provide a legitimate, non-discriminatory reason for his termination. Defendants met this burden by showing that Plaintiff was terminated for violating the company's Drug & Alcohol Policy. Now, the burden shifts back to Plaintiff to demonstrate that Defendants' reason was merely pretext. Plaintiff did not respond and therefore fails to meet his burden. Moreover, as explained above in the disparate treatment analysis, the Court finds that the record is devoid of any evidence that would support a claim of pretext. Because Plaintiff failed to show that Defendants' "proffered reason was merely a pretext to mask discriminatory actions," he cannot establish this element of his claim. Id. As such, Plaintiff's retaliation claim fails, and Defendants'. Motion for Summary Judgment on Plaintiff's retaliation claim is due to be **GRANTED**.

## III. State Law Defamation Claim

Plaintiff claims that Defendants made false and defamatory statements regarding his involvement in distributing drugs at work. "To establish a cause of action for defamation, a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3)

25

fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words 'injurious on their face.'" RCO Legal, P.S., Inc. v. Johnson, 820 S.E.2d 491, 498-499 (Ga. Ct. App. 2018) (quoting Chaney v. Harrison & Lyman, L.L.C., 708 S.E.2d 672, 676 (Ga. Ct. App. 2011)). Under Georgia Law, "[p]ublication of the statement is imperative and, without it, the defamation claim fails." Saye v. Deloitte & Touche, L.L.P., 670 S.E.2d 818, 821 (Ga. Ct. App. 2008); see O.C.G.A. § 51-5-1(b) ("The publication of the libelous matter is essential to recovery."). The publication requirement is expressed in the second element of a claim of defamation. "Generally, publication is achieved by communicating a defamatory statement to anyone other than the person being defamed." Saye v. Deloitte & Touche, L.L.P., 670 S.E.2d 818, 821 (Ga. Ct. App. 2008). However, "statements made during private, intra-corporate investigations . . . are not [considered] 'published' for purposes of a defamation claim. Lewis v. Meredith Corp., 667 S.E.2d 716, 719 (Ga. Ct. App. 2008) (citing O.C.G.A. § 51-5-7(2), (3)). Further, "A plaintiff cannot prove publication without introducing evidence of the specific statement used in an allegedly defamatory communication." Lewis v. Meredith Corp., 667 S.E.2d 716, 718 (Ga. Ct. App. 2008).

Plaintiff cannot establish a claim of defamation because he fails to identify a false or defamatory statement made by Defendants and fails to satisfy the publication requirement.

AO 72A
(Rev. 8/82)

Plaintiff does not point to any specific false or defamatory statements made by Defendants and, even if he did, those statements were made during an intra-corporate investigation and are therefore not considered "published" for purposes of his defamation claim.

First, Plaintiff claims that Defendants made false and defamatory statements regarding his involvement in distributing drugs at work, but he fails to point to any specific false statement made by Defendants. In fact, when questioned about his defamation claim, Plaintiff mentioned only one statement made by Defendant Moore—"there's clearly something in [Plaintiff's] hand." Plaintiff cannot claim that this statement was false or defamatory as he later admits that he had change in his hand at the time. This is the only statement that Plaintiff testified to as being false or defamatory, and his own testimony invalidates this claim. Because Plaintiff fails to offer evidence of specific false or defamatory statements made by Defendants, he cannot satisfy the first element of his defamation claim.

Second, assuming *arguendo* that Plaintiff could point to a specific false and defamatory statement made by Defendants, his claim would also fail because these statements occurred during a private, intra-corporate investigation and are not considered "published" for purposes of a defamation claim. Plaintiff admits that all of the allegedly false statements were made during the

27

investigation.  See Dkt. No. 48-1 ¶ 103.  Specifically, these statements were made during the meeting in Defendants' office. Therefore, even if Plaintiff had identified specific false or defamatory statements made during that meeting, those statements would not qualify as being "published" for purposes of his defamation claim because they fall under the intra-corporate exception to the general rule.

Although Plaintiff testified that the statements were "published" when "it got out" that his employment was terminated, he was unable to identify the individuals who made the alleged statements.  He further testified that the statement that Moore made about there being something in Plaintiff's hand was not told to anyone else.  Dkt. No. 48-6 at 193.  Rather, he testified that it was made to others present in the office.  Id. at 192.  Moreover, Plaintiff does not identify any other individuals who made any alleged statements.  Dkt. No. 48-6 179-181.  Finally, Plaintiff admits that he is not aware of any of the individual Defendants telling others about the investigation or making defamatory statements about him.  Dkt. No. 48-6 at 193, 196-97.  Thus, Plaintiff has failed to establish the first two elements of his defamation claim,[13] and for these reasons, Defendants' Motion for

---

[13] Additionally, Plaintiff cannot prove the third element of his defamation claim that Defendants acted at least negligently because any statements made about what was in his hand on the video were made in a private office with only management present. Under such circumstances, without evidence to the contrary,

AO 72A
(Rev. 8/82)

Summary Judgment on Plaintiff's Defamation Claim is due to be **GRANTED**.[14]

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, dkt. no. 48, is **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED**, this 27th day of June, 2019.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

even assuming the statement or statements made were false, Defendants did not make them negligently.

[14] Moreover, Elixir cannot be held liable for defamation in this case for the additional reason that Plaintiff has failed to show that it directed or authorized slander of Plaintiff or that the alleged defamatory statements were made by an employee acting within the scope of his employment. See H&R Block Eastern Enters. v. Morris, 606 F.3d 1285, 1296 (11th Cir. 2010) ("Under Georgia law, an employer is not liable for a slanderous statement made by its employee unless the employee 'was expressly directed or authorized to slander the plaintiff' or if the employee was 'acting within the scope of his employment.'" (quoting Lepard v. Robb, 410 S.E.2d 160, 162 (Ga. Ct. App. 1991)) (citing Garren v. Southland Corp., 228 S.E.2d 870, 871 (Ga. Ct. App. 1976))).

AO 72A
(Rev. 8/82)